## THE EDDYSTONE.[1]

### AMADON v. THE EDDYSTONE.

#### (*District Court, E. D. Virginia.*   December 14, 1887.)

MARITIME LIENS—NEGLIGENCE—PERSONAL INJURIES.

> A laborer who went on board a ship to secure employment, but had not been actually employed, (it being the custom to employ laborers on the wharf,) three hours before the ship was ready to commence loading, was injured by the falling of a derrick which the crew were rigging up, and which was negligently allowed to fall. Warning had been given, but was not heard by the laborer, as he had not then gotten aboard the ship. On libel by him for personal injuries, *held,* that both were in fault, and the damages were divided, the estimate of damages, however, including only expenses and loss of time.

In Admiralty.   Libel for damages for injury to the person.

*Sharp & Hughes,* for libelant.

*Harmanson & Heath,* for respondent.

HUGHES, J.   James O. Amadon, the libelant, was painfully injured on the 17th day of November, 1886, on board the English steam-ship Eddystone, which was making ready to take on cotton at Norfolk. He had previously spoken to William Welsh, acting chief of stevedores, in Norfolk, for employment in loading cotton, who had said to him that he would give him work on the next ship that would be ready to take on cotton. After this conversation the Eddystone was the next ship to come along-side of the wharf for the purpose of taking on a load of cotton. She had made fast, and was rigging her derrick, and getting ready to receive her cargo, when Amadon, seeing Welsh on the after-part of the deck of the Eddystone, stepped on board, and was moving towards Welsh when the boom of the derrick, which some of the crew of the Eddystone was hoisting to its place, made a sheer, became unmanageable, and fell, the end of it striking Amadon while he was ascending a flight of steps which led in the direction of the place where he had seen Welch. His injuries were very severe, and for a time painful, and he was treated for several months in St. Vincent's hospital in this city, where he was nursed by the Sisters living in that institution, and treated by its physician. It is probable that he is permanently injured, and it is certain that he has not yet (December, 1887) recovered sufficient strength to engage in any work requiring active physical exertion. His libel is for damages for bodily injuries, for expenses incurred, and loss of time from work, and are laid at $10,000. The boom which fell, and was the instrument that produced the accident, belonged to one of the derricks of the Eddystone, which the boatswain and two of the crew were rigging and making ready for use in lifting cotton upon the ship. They were in the act of raising this boom when Amadon came on board the ship. When about to commence the raising of the boom, the boatswain cried

[1] Reported by Robert M. Hughes, Esq., of the Norfolk bar.

out, giving notice to all on board to look out. This notice could be heard by whoever was on board, but was not heard by Amadon, who was at the time on the wharf, and who came on board soon afterwards, and was stepping rapidly in the direction of Welsh when he was struck by the falling boom. The Eddystone was not yet ready to receive cotton when Amadon came aboard. When the accident occurred she was still in the act and course of preparing to receive her load, and to be in safe condition and readiness to be boarded by whoever should be engaged, directly or indirectly, in the business of the cargo which she was there to receive. I think the foregoing statement, though far from being full, exhibits the controlling facts of the case.

I do not feel called upon, in this opinion, to dwell on the details of the manner in which the boom which inflicted the injury came to fall. If the ship was bound, before she had made herself ready on her deck for engaging in the work of taking on cargo, and at a time when part of her crew might have been needed in other measures of preparation, to man her derrick so completely as to render the falling of the boom absolutely impossible, then the maxim *res ipsa loquitur* might apply. But certainly there was no such obligation upon the ship while yet unready to receive cargo. Or, if the ship had begun to take on cargo, or signified her readiness to begin, and thereby impliedly contracted to use all proper diligence for the security of persons coming on board against accidents, then the mere fact of the falling of her boom would have been an act which would have raised the strongest presumption of negligence. This ship, however, was not ready to receive her cargo. The stevedore Welsh, whose duty it was to know when she would be so, states that, whereas the accident occurred at about half past 11 A. M., the ship was not then likely to be ready until half past 2 P. M. He says, moreover, that he invariably employed laborers on the wharf, and that although in exceptional cases he might engage a man when on deck, yet, in point of fact, he always engaged them on the wharf, which was the proper place for the purpose.

The case on each side, then, is this: on one hand, three hours before the ship was ready to engage in receiving cargo, while in the act, with three of her crew, of raising one of her derricks in part preparation, the boom of that derrick fell, those engaged in raising it having given warning to all persons to look out for accidents. On the other hand, three hours before laborers were authorized to come on board for the purpose of loading cotton, a man, not yet employed for the purpose, steps on board, and places himself just at the point of danger; it being urged in his justification that he went from the wharf, where laborers are engaged, to the deck of the unready ship, where they are never engaged, to secure employment in loading the ship. Such is the case to be adjudicated. I do not think the ship was bound before she was ready, and while in the act of making ready for promiscuous visitation by all persons who might, through whim or on business, come upon her decks, to so man her derrick as to insure against the possibility of such an accident as happened. And I think the case of this ship is one for the most lenient

possible application of the very stringent rule of law which holds accidents of this sort to be necessarily the result of fault and negligence. On the other hand, I think it proven that Amadon was not on the ship in the line of rightful business. He was seeking employment; and went from the wharf, where alone he could have been enlisted, upon the ship, where laborers are never engaged. He was not on deck in the line of business. He was there for no legal purpose. He was there before the ship was ready to guarantee safety to strangers coming on board. He had no rights there, except the right not to be hurt by the negligent act of the ship. He was bound, being there under such circumstances, to observe the strictest diligence in keeping out of harm's reach, and he was in fault in not getting out of the way of so palpable an accident as the falling of a large boom at mid-day, after warning had been given to all bystanders to look out. The rule of admiralty requiring the damages to be divided where both parties are at fault must be applied here; and, in estimating them, the case is one which forbids the idea of punitive or vindictive damages.

The actual damages I must estimate somewhat arbitrarily. The libelant is still in feeble condition of body, unable to engage in laborious work. His board for one year is not an unreasonable allowance, under the circumstances, and this is $395. The medical account, which is not on file, is said to be $45. The loss of time from work I will consider one year, at a dollar a day for 313 days. The total will therefore be $753. For half of this sum I will give a decree, and costs, against the respondents.